IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| In re: ) | |
| ) | |
| SYLVESTER EVERETT BOOKER ) | |
| and ELLA MORNETT BOOKER, ) | Case No. 08-42466-drd-7 |
| ) | |
| Debtors. ) | |

## MEMORANDUM OPINION

This matter comes before the Court on the motion of the United States Trustee to dismiss this case pursuant to 11 U.S.C. § 707(b)(3). The Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 1334(b), 157(a) and 157(b)(1). This is a core proceeding which this Court may hear and determine, pursuant to 28 U.S.C. § 157(b)(2)(A). The United States Trustee argues this case should be dismissed based both upon the totality of the Debtors' financial circumstances and on the grounds that the filing was made in bad faith. The following constitutes my Findings of Fact and Conclusions of Law in accordance with Rule 52 of the Federal Rules of Civil Procedure made applicable to this proceeding by Rules 7052 and 9014(c) of the Federal Rules of Bankruptcy Procedure. For the reasons set forth below, the Court grants the U.S. Trustee's motion to dismiss the case and will enter an order dismissing the case unless, within 20 days of the date of this order, the Debtors elect to convert the case to a proceeding under Chapter 13.

### I. FACTUAL AND PROCEDURAL BACKGROUND

On June 19, 2008, Debtors filed a petition for relief under Chapter 7 of the Bankruptcy Code. The original Schedule I showed joint net monthly income of $3,989.63. Debtors' original Schedule J reflected expenses of $3,982.00. On August 1, Amended Schedules I and J were filed with the Court. The amended Schedule I shows monthly net combined income of $5,898.35. The difference is attributable to an additional $700.00 scheduled by Debtor Ella Booker for her part-time

employment and $1,200.00 in monthly Social Security benefits received by Debtor Sylvester Booker. The Schedule J was also amended upward to show total expenses of $5,884.00. A final amendment to Schedule J was made on October 20, 2008 showing total expenses of $5,894.00 for a net disposable income of $4.35. As noted above, a portion of the income received by the Debtors each month, the sum of $1,200.00, derives from Social Security benefits. Among the listed deductions and expenses, many of which were not included on the original Schedule J, include $196.67 in monthly contributions to the Debtors' 401k retirement plans, $1,610.00 in monthly housing expense, a $1,268.00 monthly payment on a 2006 Lexus, a $198.00 payment on a debt secured by the Debtors' interest in a timeshare, a $350.00 contribution the Debtors make to their incarcerated son, $200.00 in cell phone expenses and $210.00 in miscellaneous personal and household expenses.

## II. DISCUSSION AND ANALYSIS

### A. Dismissal Under Totality of the Circumstances

#### 1. General Considerations

Section 707(b)(1) provides that, after notice and a hearing, the Court may dismiss a case filed by an individual whose debts are primarily consumer debts if it finds that granting relief would be an abuse of the provisions of Chapter 7. In some cases, abuse is presumed, although that presumption is subject to being rebutted by a demonstration of special circumstances. 11 U.S.C. § 707(b)(2). In this case, the U.S. Trustee does not rely upon the presumption of abuse, but argues instead that the case should be dismissed pursuant to § 707(b)(3) both on the grounds that the totality of the Debtors' financial circumstances warrants finding that granting relief would be an abuse and also on the grounds that the case was filed in bad faith. Prior to the enactment of the

Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), the Court could only dismiss a Chapter 7 proceeding if it found that granting relief would be a *substantial* abuse. The Court now need only find that the granting of relief would be an abuse of the provisions of Chapter 7. In addition, the presumption in favor of granting relief to the debtor has been deleted from the Code. The movant bears the burden of proof to demonstrate abuse. *In re Cribbs*, 387 B.R. 324 (Bankr. S.D. Ga. 2008). The provision upon which the U.S. Trustee relies states that:

> (3) In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption in subparagraph (A)(i) of such paragraph does not arise or is rebutted, the court shall consider –
>
> (A) whether the debtor filed the petition in bad faith; or
>
> (B) the totality of the circumstances (including whether the debtor seeks to reject a personal services contract and the financial need for such rejection as sought by the debtor) of the debtor's financial situation demonstrates abuse.

In this case there is no question but that the debts are primarily consumer debts. The Debtors checked the appropriate box on the petition so indicating and have not suggested otherwise during the course of these proceedings.

Prior to BAPCPA, the courts in the Eighth Circuit had taken the position that the debtors' ability to pay was a primary consideration, possibly determinative, in deciding whether the granting of relief under Chapter 7 would constitute a substantial abuse. *See In re Praleikas*, 248 B.R. 140, 145 (Bankr. W.D. Mo. 2000) (citing *Stuart v. Koch (In re Koch)*, 109 F.3d 1285, 1286 (8th Cir. 1997); *see also*, *In re Walton*, 866 F.2d 981, 984-85 (8th Cir. 1989); *In re Bicsak*, 207 B.R. 657, 662 (Bankr. W.D. Mo. 1997); *In re Regan*, 269 B.R. 693, 696 (Bankr. W.D. Mo. 2001). The Eighth Circuit also made clear, however, that the Court could consider the debtors' good faith in assessing

whether dismissal was appropriate. *Walton*, 866 F.2d at 983. In so doing, the Court observed that the bankruptcy court thus had the flexibility to consider whether relief should be denied based on the debtors' lack of need or the debtors' lack of honesty. *Id.* The detailed screening process, embodied in the means test, through which debtors seeking relief under Chapter 7 are required to pass after BAPCPA prompted an initial debate in the academic literature with regard to whether ability to pay continued to be an appropriate consideration for the court in deciding whether the granting of a relief would be an abuse under § 707(b)(3). *See* Hon. Eugene R. Wedoff, *Means Testing in the New § 707(b)*, 79 Am. Bankr. L.J. 231 (Spring 2005) and Marianne B. Culhane & Michaela M. White, *Catching Can-Pay Debtors: Is the Means Test the Only Way?*, 13 Am. Bankr. Inst. L. Rev. 665 (Winter 2005) (suggesting means test exclusive test in determining ability to pay). Notwithstanding this dispute, the vast majority of the courts considering the question has determined that ability to pay continues to be an appropriate consideration in requests for dismissal pursuant to § 707(b)(3). *In re Lenton*, 358 B.R. 651, 662-63 (Bankr. E.D. Pa. 2006) (collecting cases); *In re Pak*, 343 B.R. 239 (Bankr. N.D. Cal. 2006); *In re Paret*, 347 B.R. 12 (Bankr. D. Del.. 2006); *In re Simmons*, 357 B.R. 480 (Bankr. N.D. Ohio 2006). Some courts continue to hold that it is a potentially dispositive consideration.. *In re Freis*, 2007 WL 1577752 (Bankr. W.D. Mo. 2007); *In re Fisher*, 2007 WL 2079781 (Bankr. N.D. Ohio) (may consider ability to repay debts out of future earnings which alone is sufficient to warrant dismissal); *In re Parada*, 2008 WL 126626 (Bankr. S.D. Fla. 2008) (determination of abuse should focus solely on debtor's financial situation).

This Court agrees with the majority and believes that consideration of the debtors' ability to pay is appropriate for several reasons. First, the statute clearly authorizes and directs the Court to consider the ***totality*** of the debtors' circumstances when ruling on a motion brought under

4

§ 707(b)(3). Not only that, the statute specifically refers the Court to the totality of the circumstances of the debtor's *financial* situation. Clearly, the debtors' income and expenses, and resulting ability to pay, are part of the totality of the debtors' circumstances and are central to an assessment of the debtors' financial situation. Accordingly, the clear language of the statute warrants consideration of the debtors' ability to pay in making this analysis. Second, to decline to consider the debtors' actual ability to pay is not only unfaithful to the language of the statute but would grant debtors a safe harbor which is unwarranted. By its terms, the statute authorizes the Court to dismiss a case for abuse notwithstanding the fact that the presumption may not arise or arises and is rebutted. In such cases then the results of the means test are not dispositive. In making this analysis therefore, the Court is not bound by the calculation of the debtors' current monthly income, which is not based on the debtors' actual income at the time the Court is determining the propriety of relief. Nor is it bound by the itemization of expenses which the debtors are entitled to deduct from that current monthly income pursuant to § 707(b)(2), which incorporates applicable Internal Revenue Service Standards – objective measures unrelated to the debtor's actual expenses. Accordingly, this Court believes that post-BAPCPA, a debtor's actual ability to pay is a primary and potentially dispositive consideration in assessing whether the case constitutes an abuse of the provisions of Chapter 7 of the Bankruptcy Code.

Courts considering the effect of the amendments made by BAPCPA have held that the precedents setting forth the framework for analysis of the substantial abuse question and identifying factors for consideration remain helpful when considering motions to dismiss under the new statutory provisions. *See, e.g., In re Mestemaker*, 359 B.R. 849 (Bankr. N.D. Ohio 2007); *In re Pfieffer*, 365 B.R. 187 (Bankr. D. Mont. 2007); *In re Sullivan*, 370 B.R. 314 (Bankr. D. Mont. 2007);

*In re Mondragon*, 2007 WL 2461616 (Bankr. D.N.M.). While those decisions retain some relevance, the Court must consider the fact that Congress has now bifurcated the grounds for dismissal by listing them in separate subparagraphs phrased in the disjunctive. Accordingly, they constitute separate and distinct grounds for relief. *In re Henebury*, 361 B.R. 595 (Bankr. S.D. Fla. 2007). Accordingly, this Court agrees with the suggestion made by the U.S. Trustee in her post-trial brief that in assessing whether the filing was made in bad faith, this Court should focus more on conduct. Failure to observe that limitation would result in collapsing the two separate justifications for dismissal into one. Conversely, when assessing whether the case should be dismissed as an abuse based upon the totality of the Debtors' financial circumstances, the Court should consider primarily, if not exclusively, the Debtors' ability to pay. *See, e.g., In re Parada*, 2008 WL 126626 (Bankr. S.D. Fla.) (determination of abuse under § 707(b)(3)(B) focuses solely on circumstances relating to debtors' financial situation). In this case, the full panoply of factors remains relevant because the U.S. Trustee has sought dismissal on both grounds. In other proceedings in which the U.S. Trustee or an eligible creditor seeks dismissal only on grounds of bad faith or only on the basis of the totality of the debtors' financial situation, the Court would limit its consideration based on the grounds for the relief sought.

### 2. Inclusion of Social Security Income

A subsidiary question which arises in this case is whether it is appropriate for the Court to consider the Debtors' Social Security income in evaluating their ability to pay. The question arises because Congress has specifically excluded Social Security income from the definition of current monthly income. *See* 11 U.S.C. § 101(10A)(B). Debtors argue that the exclusion of Social Security income from current monthly income indicates a Congressional policy decision that Social Security

6

income need not be committed to the payment of unsecured creditors. The U.S. Trustee argues that in making an assessment under § 707(b)(3), the Court is not bound by the definition of current monthly income and the availability of the Social Security funds should be considered. For many of the same reasons cited above, the Court believes it appropriate to consider the Debtors' Social Security income in assessing their ability to pay. The Social Security income is part of the totality of the Debtors' financial circumstances. In considering the totality of the Debtors' financial circumstances, the Court is not bound by the definition of current monthly income.

Recently, the Court in *In re Calhoun*, 396 B.R. 270 (Bankr. D.S.C. 2008) considered precisely this question and held that in examining the totality of the debtors' financial circumstances, the Court could consider the debtors' ability to pay and that Social Security income should not be excluded from consideration in making that analysis. *Id.* at 276. ("Such income should not therefore be excluded from consideration in analyzing ability to pay as a component of the totality of the debtors' financial circumstances under § 707(b)(3)"). Among other things, the Court noted the fact that Congress specifically excluded Social Security income from the definition of current monthly income and did not direct the Court to exclude that income source when assessing the totality of the debtors' financial circumstances. In other words, Congress knew how to exclude income from the Court's consideration when it chose to do so and it chose not to do so in connection with § 707(b)(3). Accordingly, the Court will consider the Debtors' Social Security income in determining their ability to pay unsecured creditors[1]. The Court therefore finds that the Debtors'

---

[1] In determining the appropriate method for assessing the projected disposable income for below-median debtors, this Court had previously held, in *In re Rush*, 387 B.R. 26 (Bankr. W.D. Mo. 2008) that it would exclude Social Security income. That decision was predicated upon the definition of current monthly income (incorporated into the definition of disposable income by § 1325(b)(2)) which specifically excludes such income and the view that disposable income equated with projected disposable income based upon the formulaic approach expressed in the Bankruptcy Appellate Panel's decision in *Coop v. Frederickson (In re Frederickson)*, 375 B.R. 829 (8th Cir. B.A.P.

7

income for this purpose is $5,898.35. The Court now turns to the numerous issues on the expense side of the equation.

### 3. Evaluation of Debtors' Expenses

This Court has consistently held that the current monthly expenses of debtors seeking a discharge under Chapter 7 should show some evidence of "belt tightening." *In re Reeves*, 326 B.R. 436, 446 (Bankr. W.D. Mo. 2005); *In re Smith*, 269 B.R. 686, 692 (Bankr. W.D. Mo. 2001). The U.S. Trustee contends that not only is there no such evidence but the Debtors' expenses reflect unnecessary and excessive expenditures, some of which are on luxury items. In particular, the U.S. Trustee contends that if the Debtors would eliminate or reduce their current expenses for 401k contributions, housing, a payment on a debt secured by a 2006 Lexus, a payment on a debt secured by an interest in a timeshare, the contribution to their son, their cell phone and other miscellaneous expenses, the Debtors could pay a substantial dividend to unsecured creditors. The Court will review each of these issues in turn.

Schedule I indicates that the Debtors have deducted from their income the sum of $196.67 each month for contributions to their 401k plans. Debtors argue that while the 401k contributions are not expenses which are specifically authorized under § 707(b)(2), they are allowable to a debtor in a Chapter 13 proceeding, citing § 541(b)(7). Debtors also appear to argue that the 401k contributions should be deductible under the special circumstances doctrine. Considering that the Court's inquiry is not based on § 707(b)(2), the doctrine of special circumstances is inapplicable.

---

2007). As noted above, in determining whether granting relief under Chapter 7 would be an abuse under § 707(b)(3), this Court is not bound by the definition of current monthly income. The Court's prior holding is thus distinguishable. In addition, since that time, the Eight Circuit Court of Appeals has held that in determining projected disposable income, the Court is not bound by the information contained on the Form 22C but may consider the income shown on the debtors' Schedule I. *Coop v. Frederickson (In re Frederickson)*, 545 F.3d 652 (8th Cir. 2008).

The U.S. Trustee suggests that the 401k contribution should simply be disallowed, citing *In re Regan*, 269 B.R. 693, 696-97 (Bankr. W.D. Mo. 2001). Prior to the enactment of BAPCPA, however this Court had not routinely disallowed such contributions but allowed them subject to a limit of 3% of the Debtors' gross income or $200.00, whichever was less, at least in the absence of objection. *See*, *Regan*, 269 B.R. 693 at 697, n. 2. The Debtors' contributions in this case are within that range.

Pre-BAPCPA, in the context of a § 707(b) motion, repaying 401k loans and making retirement contributions were regarded as factors tending to show abuse. *See, e.g., In re Behlke,* 358 F.3d 429, 436-37 (6th Cir. 2004) (repayment of 401k loans is disposable income for purposes of determining ability to pay creditors); *In re Austin,* 299 B.R. 482, 487 (Bankr. E.D. Tenn. 2003) (collecting cases which consider retirement contributions or retirement loan repayments as disposable income for § 707(b) purposes). Post-BAPCPA, some courts have adopted the position taken by the U.S. Trustee and disallowed contributions to retirement plans as expenses in conducting the totality of the circumstances analysis. *In re Zaporski* 366 B.R. 758, 773 (Bankr. E.D. Mich. 2007). Several courts have held that a debtor's ability to pay retirement loans and still pay their unsecured creditors is a factor tending to show abuse. *E.g., In re Freis,* No. 06-30393, 2007 WL 1577752 at *1 (Bankr. W.D. Mo. 2007).

A number of courts, however, have begun to adopt a case-by-case approach and considered whether retirement contributions are reasonably necessary based upon the unique circumstances of the debtor's particular situation. *In re Beckerman*, 381 B.R. 841 (Bankr. E.D. Mich. 2008); *In re Littman*, 370 B.R. 820 (Bankr. D. Idaho 2007). This strikes the Court as a more reasonable and flexible approach. Under that approach, the Court would consider a number of factors in

9

determining the propriety of permitting deductions for retirement plan contributions including: (1) the debtor's age and time left until retirement; (2) the level of the debtor's yearly income; (3) the debtor's overall budget; (4) the amount of the monthly contributions; (5) the needs of any dependents; and (6) other constraints which make it likely that retirement contributions are reasonable necessary expenses for those debtors. *Id.* at 848. There is little evidence in the record with regard to those factors, aside from the observation that Mr. Booker is 70 and Mrs. Booker is eligible to retire in May of 2010. There is no evidence of the amount of funds already in the 401k plans, what other retirement resources the Debtors may have available to them or what kind of income they might expect or need in retirement. Accordingly, the Court cannot make any findings with regard to the need of the Debtors to continue to make contributions to their 401k plans. For those reasons, the Court finds that the U.S. Trustee has not met her burden of showing that allowing deductions for the 401k contributions would be an abuse of the provisions of the Bankruptcy Code.

The Debtors owned three vehicles at the time they filed, a 1993 Buick unencumbered by a lien, a 2001 Chrysler subject to a lien on which the monthly payment is approximately $262.00 and a 2006 Lexus bought new in 2005 for approximately $54,000.00 and on which the monthly payment is $1,268.00. The Buick is not being driven as the Debtors contend it is not operable. The Debtors propose to surrender the Chrysler and retain the Lexus, reaffirming the debt it secures. The proffered justification for this decision is that the Lexus is "more dependable." The Court finds the testimony on this point unconvincing. Debtor Ella Booker testified that new brakes and tires recently had to be put on the vehicle. That strikes the Court as being nothing more than ordinary maintenance and no indication that the vehicle is mechanically unreliable. She also testified that the vehicle had been stolen and "shot up," but offered no details as to the specific damage done to the

vehicle or how it affected its operation. As the Court pointed out, given the $1,000.00 difference between the payments on the vehicles, the Debtors could easily make several hundred dollars per month in repairs and still operate the Chrysler more economically than the Lexus. The Debtors' decision to surrender the Chrysler while reaffirming the debt on the Lexus is Exhibit A in support of the U.S. Trustee's contention that based on the totality of the Debtors' financial circumstances granting them relief under Chapter 7 would be an abuse. It reflects more clearly than any other fact the Debtors' refusal to engage in any "belt tightening" and their lack of inclination to pay their unsecured creditors even though they would clearly have the capacity to do so if they were not attempting to retain a late model luxury vehicle. The Debtors make the point that they are retaining only one vehicle while they would each have the right to one under the means test. While true, reasonable allowances for two vehicles would still aggregate substantially less than the payment on the Lexus. The IRS Standard, for example, is $489.00. Moreover, the Debtors concede that they only need one vehicle.

If the proposed retention of the Lexus is Exhibit A in the U.S. Trustee's case for abuse, surely Exhibit B is the $350.00 per month which the Debtors pay to their son. Their son is presently incarcerated in the federal penitentiary in Leavenworth, Kansas. Suffice it to say that his needs for room and board are already well accommodated. Ms. Booker testified that the money sent to their son is used for discretionary expenditures. Clearly, this entire amount is unnecessary and unreasonable. Once again, it is indicative of the Debtors' failure to pare their expenses to reasonable levels. Disallowance of this monthly expenditure provides another source of repayment for the Debtors' unsecured creditors.

In addition to proposing to reaffirm the debt on the 2006 Lexus, the Debtors also propose

11

to reaffirm the debt on a timeshare interest, the monthly payment on which is $198.00, a payment which the Debtors failed to disclose in their original Schedule J. The Debtors have offered absolutely no justification for retaining the property and continuing the payment. There is no indication that this property is necessary for the health and welfare of the Debtors or their dependents or produces income. It is, as far as the Court can ascertain, purely recreational and should be sacrificed with the money redirected to the payment of unsecured creditors.

The U.S. Trustee also objects to the Debtors' telecommunications expense. Mrs. Booker testified that although the Debtors have a land line, they also spend approximately $200.00 per month for cellular telephone expenses. She testified that the cell phone is used in the husband's business, an expense for which he receives no reimbursement. She also testified, however, the total usage on the phone is only approximately 300 minutes per month. The U.S. Trustee suggests, and this Court agrees, that this amount is excessive for only two lines with that monthly usage and could be trimmed by approximately $100.00 per month.

The U.S. Trustee also contends that the Debtors' housing expense of $1,610.00 is excessive. In support of that argument, the U.S. Trustee merely notes that the applicable IRS standard is $764.00. While a comparison to the IRS standard may be helpful in assessing the reasonableness of Debtors' housing expense, it is not determinative. Just as the Court is not bound to accept those standards as an allowance to the Debtors, it is not bound to accept them as a limit. While the Debtors could likely obtain less expensive housing, the Court is left to speculate as to what the cost of those arrangements might be. More importantly, there is no evidence as to the size of the Debtors' house or the nature of its amenities. In the absence of such evidence, the Court cannot conclude that the Debtors are retaining a luxury home or expending an amount significantly in

excess of what might be reasonable under the circumstances. Because the record does not contain evidence from which the Court could make a finding about whether the home ownership expense is unreasonable, the Court finds that the U.S. Trustee has not met her burden of demonstrating that granting relief would be an abuse based on these payments.

Finally, the United States Trustee notes that in addition to all the other specific line items for which the Debtors claim expenses on Schedule J, they have listed $210.00 of miscellaneous expenses identified as household expenses of $50.00, personal expenses of $85.00 and miscellaneous expenses of $75.00. Mrs. Booker did little to justify these expenses or to indicate why they were not already accounted for among other expenditures listed on Schedule J. While the Court believes that some allowance for miscellaneous expenses is appropriate and the amount involved is not as significant as others discussed above, it still considers these allowances excessive given the Debtors' inability to explain their nature and purpose. They provide additional evidence that rather than attempting to minimize their expenditures, these Debtors' approach more closely approximates expense maximization.

The Court must therefore consider what net income the Debtors have available to commit to the payment of unsecured creditors under a Chapter 13 plan. As noted above, the Court has determined that their net monthly income is $5,898.35. The expenses listed on their Schedule J total $5,894.00. The Court has determined that the $350.00 contribution the Debtors make to their son and the $198.00 timeshare payment should be deleted from their expenses. After deleting those expenses, reducing the cell phone charges and miscellaneous expenses by $100.00 each and reducing the secured debt payment on the automobile to approximately $500.00 allowed by the IRS expenses results in total deductions from the Debtors' expenses of $1,516.00. The resultant expense

13

figure is $4,378.00. The Debtors have scheduled no priority debt and their only secured debt is taken into consideration in these modified expense numbers. The Debtors would thus have $1,520.35 per month to contribute to the payment of their non-priority unsecured creditors. Spread over a period of 60 months, this would yield payments totaling $91,221.00 or 36.8% of the $247,845.00 in such debt listed on Debtors' Schedule F. That represents a substantial payment. This Court has previously held that Debtors' ability to pay a similar dividend indicates that Chapter 7 relief is not appropriate. *See, e.g., Reeves*, 327 B.R. at 445-46 (dividend from 21.8% to 27.1%); *Reagan*, 269 B.R. at 698 (29%); *Praleikas*, 248 B.R. at 145 (20%).

### B.  Dismissal for Bad Faith

Although prior to the enactment of BAPCPA, courts disagreed as to whether a Chapter 7 case could be dismissed on the ground that it was not filed in good faith, the statute now specifically authorizes the court to dismiss a case filed in bad faith. *See* 11 U.S.C. § 707(b)(3)(A); *see also, In re Huckfeldt*, 39 F.3d 829, 832 (8th Cir. 1994) (determining that bad-faith may not be sole cause for dismissal under § 707(a); citing other cases on both sides of issue). A number of factors have been identified as relevant in making this determination, including: that the debtors made purchases without an ability to pay the accompanying debt, whether there was significant eve of bankruptcy spending, whether the debtor's income and expenses are accurately stated and any other misbehavior. *See In re Mitchell*, 357 B.R. 142, 154-55 (Bankr. C.D. Cal. 2006). Prior to the enactment of BAPCPA, in considering the question of good faith in another context, the Eighth Circuit had adopted a totality of the circumstances test. *See, e.g., In re LeMaire*, 898 F.2d 1346,

14

1349 (8th Cir. 1990) (considering whether Chapter 13 plan filed in good faith[2]). Some of the factors cited in *LeMaire* are not relevant here because of the different context. Others are not relevant because they focus on ability to pay, the focus of the other subparagraph of the statute. As noted above, the Court believes that in determining whether the filing was made in bad faith, the Court should focus primarily upon the Debtors' conduct, including whether the Debtors have complied with the applicable provisions of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure, whether they have engaged in any concealment or misrepresentation in connection with the case or otherwise manipulated the Bankruptcy Code.

Considering these factors applied to this case, the Court agrees with the U.S. Trustee that this case was not filed in good faith and should be dismissed for that reason as well. In addition to the Debtors' failure to minimize expenses, retention of luxury items and ability to repay a significant portion of their unsecured debt, these Debtors have not demonstrated the degree of candor that the

---

[2]The factors the *LeMaire* court looked at are:

(1) the amount of the proposed payments and the amount of the debtor's surplus;

(2) the debtor's employment history, ability to earn and likelihood of future increases in income;

(3) the probable or expected duration of the plan;

(4) the accuracy of the plan's statements of the debts, expenses and percentage repayment of unsecured debt and whether any inaccuracies are an attempt to mislead the court;

(5) the extent of preferential treatment between classes of creditors;

(6) the extent to which secured claims are modified;

(7) the type of debt sought to be discharged and whether any such debt is nondischargeable in Chapter 7;

(8) the existence of special circumstances such as inordinate medical expenses;

(9) the frequency with which the debtor has sought relief under the Bankruptcy Reform Act;

(10) the motivation and sincerity of the debtor in seeking Chapter 13 relief; and

(11) the burden which the plan's administration would place upon the trustee.

15

Court has a right to expect. First, as pointed out by the U.S. Trustee, the Debtors' original schedules were materially inaccurate. Among other things, they excluded Mr. Booker's Social Security income in the amount of $1,200.00 per month and understated by approximately $700.00 the amount of average net income Mrs. Booker receives from part-time employment. Schedule J also omitted disclosure of both the $1,268.00 monthly payment on the 2006 Lexus and the $198.00 monthly payment on the Debtors' timeshare interest. Second, Debtors also failed to accurately disclose the circumstances regarding their son's incarceration and their financial support of him. Debtors claimed their son as part of the household when his residence was the federal penitentiary in Leavenworth, Kansas. The original and the amended Schedule I contain a note that the Debtors' son does not contribute to the household expenses. In addition to failing to disclose that he was not actually a member of the household, Debtors also failed to disclose at that time that they were routinely sending him $350 per month to make discretionary expenditures. The combined effect of these nondisclosures convinces this Court that the Debtors did not file their petition in good faith.

### III. CONCLUSION AND ORDER

In summary, the Court agrees with the vast majority of courts that has held that this Court may consider the debtor's ability to pay in determining whether the granting of relief to a Chapter 7 debtor would be an abuse of the provisions to the Bankruptcy Code based on the totality of the debtor's financial circumstances and that ability to pay may be a dispositive factor. The Court further holds that although Social Security income is excluded from the definition of current monthly income and is not taken into consideration in determining whether a presumption of abuse arises, the Court may nonetheless consider that income source in assessing whether the debtors have an ability to pay a substantial dividend to their unsecured creditors. The Court is specifically

empowered by the plain terms of the statute to dismiss a Chapter 7 case if it was filed in bad faith. In determining whether a filing was made in bad faith, the Court holds that it should focus primarily upon the debtors' conduct, including whether the debtors have failed to disclose material facts or misrepresented their financial condition.  Based upon the record in this case, the Court concludes that the Debtors have an ability to pay a significant dividend to their unsecured creditors if certain unnecessary or unreasonable expenditures are eliminated or reduced.  In addition, based upon their failure to make accurate and timely disclosures of their income and expenses, the Court concludes that this case was not filed in good faith.

For all the reasons stated above, the Court will grant the U.S. Trustee's motion to dismiss the case unless the Debtors choose, within 20 days of the date of this Order, to convert the case to Chapter 13.

DATED:     January 23, 2009              /s/ Dennis R. Dow
                                         HONORABLE DENNIS R. DOW
                                         UNITED STATES BANKRUPTCY JUDGE


Copies to:
Adam E. Miller, Esq.
Jason Amerine, Esq.